PRADÓ *v.* ESTATE OF RÍO.

APPEAL from the District Court of Arecibo.

No. 351.—Decided June 26, 1909.

PARAPHERNAL PROPERTY—LIABILITY OF THE HUSBAND'S PROPERTY.—The law applicable to the present case, as far as the liability of the property of the husband to answer for the personal property of the wife is concerned, is the one previous to 1880, in accordance with the provisions of section 363 of the Mortgage Law which was put in force in this Island on the 1st of May, 1880; which section corresponds to section 355 of the Mortgage Law of Spain of the 21st of December, 1869.    (Judgment of the Supreme Court of Spain of the 2d of June, 1884.)

ID.—DELIVERY OF PARAPHERNAL PROPERTY.—The plaintiff ought to have proved that she delivered her personal property to her husband in an express manner and with the intention that he should have the control (*señorío*) of the same, so that it should be clearly understood that the property of the husband became legally mortgaged to secure said delivery.

ID.—INSUFFICIENT PROOF OF DELIVERY.—In the case at bar the evidence presented by the plaintiff going to show the delivery to the husband of the paraphernal property, consisted of her own statements, a written deed granting the power of attorney and the writing of respite executed by the creditors of her husband, and of the measures taken by her after the execution of these deeds. *Held:* That such evidence cannot be reasonably considered as sufficient proof of the delivery of the paraphernalia to the husband whereon to base a judgment in favor of the plaintiff for the recovery of an alleged implied mortgage.

ID.—The delivery of the personal property of the wife to the husband not having been proven, this court cannot arrive at the conclusion that the property of the husband was legally mortgaged, and it must be presumed that the wife continued administering her own property and that the claim now brought forward is unfounded.

The facts are stated in the opinion.

*Mr. López Landrón* for appellant.

*Mr. Alvarez Nava* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This suit was brought by María de la Encarnación Pradó, viuda de Suro against the Succession of Alonso del Río to enforce a tacit mortgage on a farm called "María"; by reason of the alleged fact that she had delivered to her husband, in his life time, property derived from an inheritance, called paraphernal property. The facts, as stated in the pleadings, are fully set out in the opinion of Mr. Justice Wolf rendered on another branch of this case two days ago. It is not necessary to recapitulate them here.

This action was begun in the District Court of Arecibo on January 10, 1907. It was decided by the court, in favor of the defendant, on June 29, 1908. A motion for a new trial was made, by the plaintiff, in July thereafter and on October 13 following was overruled; and from this order an appeal was prosecuted.

In overruling the motion, the trial judge made the following decision to wit:

"This motion, requesting a new trial, was duly filed, and the court, after the hearing of argument on both sides, on the 7th of the current month, postponed the consideration of the case and appointed the 13th instant as the date on which a decision would be rendered, summoning both parties to appear on said date.

"A married woman, since she cannot enter into, or withdraw from, a contract affecting her, without full legal capacity (see the Law 55 of Toro), cannot legally take part in a meeting of her husband's creditors, because her authority to give her consent, according to law, to any act, is deficient, as she has nobody to make up that deficiency, for her husband cannot, of course, act in her behalf.

"Therefore, the power of attorney granted by Doña María Encarnación Prado, with the consent of her husband, to Don Julián Suro, on February 10, 1869, to act in her behalf and grant to her husband the respite which appears from the deed executed on March 11 following, is altogether void, as well as her agreement with the creditors in regard to the contract of respite.

"On the other hand, a contract of respite has no other object than to make the ordinary creditors put off the recovery of their claims. If any preferred creditor gives up his privilege and spontaneously agrees to wait, the ordinary creditors cannot oppose it; hence the attitude of the ordinary creditors, hearing and putting on record the statements of the creditors who appear as preferred creditors, cannot mean juridically that they accept said statements as coming from preferred creditors, but only that they acknowledge those who call themselves preferred creditors to be creditors of the debtor; because the nature of the contract, formerly entered into between the creditor who calls himself a preferred creditor and the debtor who applies for the respite, cannot be inferred from the statements of the creditors at the time of the granting of the respite, even if those statements are not refuted by the other creditors, nor can those statements be the ground for an agreement between them on the occasion of the performance of that act; but the nature of the contract between the debtor and the creditor is and always will be inferred from the legal transaction between them carried out at the time when the stipulation which gave birth to the claim was perfected.

"The object of a contract of respite cannot be other than to bind the creditors to give facilities for the payment of their claims to a

debtor whom they trust; an object which cannot either influence or alter the nature of each and every one of the transactions disclosed by the debtor on his giving a statement of his creditors.

"Now, the husband included in his statement of his creditors, his wife, on account of the 'property brought by her into the conjugal partnership.'

"From the documentary evidence and the declarations of witnesses it appears that the plaintiff possessed hereditary property, which, having been brought into the conjugal partnership without its having been included in the dowry, partakes of the nature of paraphernal property.

"But, from all the evidence introduced at the trial, there are only to be found the statements of the plaintiff, either in her oral testimony, or in the deed granting the power of attorney and the deed of respite which have been examined, or in the steps taken by her after the execution of those deeds, in support of the fact of the delivery, real and specified, made to the husband, as required by the law governing the case, so that the personal property of the wife may be secured by a legal implied mortgage on the property of the husband.

"The bare statements made and the steps taken by the plaintiff, in the manner and at the times appearing from the evidence brought at the trial cannot be considered, in a deliberate and reasonable way, as sufficient evidence on which to base a judgment in her favor in this case.

"Now as to the errors of fact alleged in the motion.

"As to the first error of fact:

"The court, in its opinion, considered that the deed of March 28, 1862, had been introduced to prove the delivery of the personal property of the wife to the husband, in connection with counts sixth and seventh of the complaint, in which counts it is so stated.

"This does not mean that that is the only evidence which has been admitted for that purpose, but it is one of the elements of proof which have been considered.

"The reference made, in the opinion, to the power of attorney granted by the wife in 1869, shows, by merely reading it, that that reference to said power of attorney has been the result of considering said power of attorney in connection with the rest of the evidence, said evidence being both the knowledge which the defendant might have had of the right alleged by Mrs. Prado and the publicity given to the act of the delivery of the personal property of the wife.

"As to the second and third errors of fact:

"The consideration of the deed of March 11, 1869, was included, although no mention was made of said deed, in thewords 'Therefore, and after carefully considering all the evidence introduced   *   *   *.'

"In regard to that deed, and in order to comply with the gracious request from the learned counsel for Mrs. Prado, the consideration given to it by the court in deciding the case is set forth in detail in this decision.

"Now as to the errors of law alleged in the motion:

"As the essential fact of the complaint, the actual and specified delivery of the personal property of the wife, has not been proved, in the opinion of the trial judge, it is not pertinent to enter into the consideration of the legal provisions in regard to an implied mortgage in a case where the same could not have originated.

"For the reasons above set forth I decide:

"That the request for a new trial made by the plaintiff should be dismissed, with costs against the same."

As may be seen by the foregoing decision, this case involves a question of the personal property (*parafernalia*) of a married woman (*bienes parafernales*). The plaintiff, Encarnación Pradó, married Juan Suro in 1855, and in the year 1860 she was put in possession of certain property acquired by inheritance. In the year 1862 said plaintiff, accompanied by her husband and with the latter's consent, sold said hereditary property, by public deed and for the price of seven thousand two hundred and seventy-nine dollars and thirty-nine cents ($7,279.39), Spanish currency. In 1871 the death of the husband took place, while he was in possession of the plantation "María," which plantation was acquired afterwards, on several occasions and in various lots, by Alonso del Río, the assignee of the defendants.

The plaintiff now, 35 years after the death of her husband, alleges that, as her personal property had not been restored to her, the legal mortgage that was established on all the property belonging to the husband from the moment of the delivery of the personal property of the wife, is in force, and that such mortgage must be paid off by the defendant succes-

sion which is at present in possession of the plantation "María."

The law applicable to the present case, as far as the liability of the property of the husband to answer for the personal property of the wife is concerned, is the one previous to 1880, in accordance with the provisions of section 363 of the Mortgage Law which was put in force in this Island on May 1, 1880; which section correseponds to section 355 of the Mortgage Law of Spain of December 21, 1869. There is no doubt whatever about this, and if there was any, it would be cleared up by the Spanish jurisprudence comprising, among others, the judgment of the Supreme Court of Spain of June 2, 1884, 55 *Jurisprudencia Civil* 342, in which judgment it was decided: *"That as the marriage and the delivery of the property of the husband took place before the 1st of January, 1863, the law that ought to have been applied to the case is that previous to the mortgage law now in force in accordance with section 355 of the latter."*

This being so, the plaintiff ought to have proved that she delivered her personal property to her husband *in an express manner and with the intention that he should have possession of the same,* so that it should be clearly understood that the property of the husband became legally mortgaged to secure said delivery. "In order that the husband should have the administration of the personal property of the wife, said property must be delivered to him in an express manner and with intention to carry it out, and in case of doubt, it must be decided that no such delivery took place. The administration of the personal property of the wife, that has not been delivered in the manner above-mentioned to the husband, belongs to the wife. The doctrine that the husband is the sole administrator of the property of the wife, without any distinction whatever, is untenable as it is contrary to the view supported by other judgments of the Supreme Court of Justice." Judgment of the Supreme Court of Spain of January 9, 1860, 5 *Revista General de Legislación,* 186. "According to the Law

17, *Título* XI, *Partida* IV, it is not sufficient that the husband. should have received and should be administering the personal property of the wife in order to have the possession of the same, but it is necessary that the delivery should have been made in an express manner and intentionally—that is to say, in a clear and authentic way in which there shall be stated what property is delivered to him and also that it is the will and intention of the wife that it should pass to the possession of the husband. Until the delivery has taken place in the specified way required by law, the administration of said personal property belongs to the wife, although with the control which according to Law 11, Title One, and Law Seven, Title Two, book 10 of the *"Novísima Recopilación"* the husband must have over the acts and contracts which she cannot perform without his consent or authorization. In this respect the trial court, by acquitting the defendant of the complaint, because, in its opinion, the fact of defendant having received and administered the personal property of his wife, presumes the delivery in an express manner and with the intention that he should have the possession of it, violates Law 17, Title XI, *Partida* IV. (Judgment of the Supreme Court of Spain of November 20, 1884, 56 *Jurisprudencia Civil,* 560 and 561.)

The trial judge, in the case at bar, finds that the plaintiff did not prove at the trial the delivery of her personal property to her husband in the way required by law, and in this respect he states in his opinion:

"In order to prove said delivery they have introduced in these proceedings the deed executed in Vega Baja on March 28, 1862, before the notary public Don José Felix Lajara by which deed the plaintiff herein, Doña María Aureliana de la Encarnación Prado sells to Don Pablo Soliveras her personal property (*bienes parafernales*), which document has the following clause: 'The party executing this deed states that she makes the said sale of her own free will and free from encumbrance for the same amount of $7,279.39, Spanish currency, which she acknowledges to have duly received.' (See page five of the record.)

"In said deed the husband, Suro, limits himself to granting the marital consent required by law, therefore said deed does not prove the delivery to the husband of the amount of the price above mentioned.

"There has also been presented as evidence by the plaintiff a power of attorney executed by the husband, Don Juan Suro, and the wife, Mrs. Prado, in favor of third parties to represent them in meeting of creditors called by said Don Juan Suro.

"In this document the wife, without it being acknowledged or contradicted by the husband, makes the following statement to wit: '*  *  *  the exclusive claim which she has on the property of the husband by reason of the property brought by her into the conjugal partnership  *  *  *  and her right to preference in the collection *  *  *.'

"In order to properly consider the probatory force of the statement made by the wife in the power of attorney it is necessary to bear in mind the moment at which she made said statement—that is to say, when the husband found himself under the necessity of calling a meeting of his creditors in order to obtain a respite." (See page six of the record.)

And in his decision on the application for a new trial, the trial judge elaborating this point, as will be seen by reference to said decision heretofore copied herein, substantially remarks:

That it appears both from the oral testimony of witnesses and the documentary evidence adduced on the trial, that the plaintiff had hereditary property which, having been brought into the conjugal partnership and not being included in the dowry, is regarded by the law as the personal property of a married woman, sometimes called paraphernalia, but, on reviewing the evidence introduced in the trial going to show that the personal property of the wife, was, in fact, delivered to the husband by real and specific delivery such as the law requires to make the claim against the husband secured by a tacit or implied mortgage fixed by the law on the property of the husband, we find only the statements made by the plaintiff herself either in her oral testimony or in the written deed granting the power of attorney and the writing of respite executed by the creditors, or in the measures taken by her af-

ter the execution of these deeds, to support the facts on which the tacit mortgage is claimed.

Such bare statements, made by the plaintiff, and such steps as she may have taken, in the manner and at the times shown by the evidence adduced on the trial, cannot be reasonably considered as sufficient proof of the delivery of the paraphernalia to the husband whereon to base a judgment in her favor against the defendant.

There are two appeals taken in this case; one from the principal judgment rendered in the court below and one from the order overruling the motion for a new trial. As both cases turn substantially on the same facts and similar legal principles the discussion has followed, to some extent, the same general lines; and reference is made to the opinion delivered by our colleague, Mr. Justice Wolf, in the former case, for the application of the law and the facts to the main judgment, from which an appeal was taken. The same principles were likewise, in some particulars, involved in the case of *Amy* v. *Amy*, recently decided in this court, and reference is also made to that case and the authorities therein cited.

A perusal of the allegations and the evidence contained in the transcript of the record, sustains the view held by the Judge of the District Court of Arecibo. And as the delivery of the personal property of the wife to the husband has not been proved, we cannot arrive at the conclusion that the property of the husband was legally mortgaged, and it must be presumed that the wife continued administering her own property and that the claim now brought forward is unfounded.

But granting, for the sake of argument only, that such delivery took place, we should, nevertheless, have to arrive at the conclusion that the plaintiff has no cause of action against the defendants. When on March 11, 1869, Juan Suro, the husband of the plaintiff, made a contract of respite with his creditors, his assets amounted to eighty-four thousand, eight hundred and thirty dollars and sixty-eight cents ($84,-

830.68), and his liabilities, including that alleged to exist on account of having received the personal property of his wife, to sixty-four thousand, nine hundred and eleven dollars and sixty cents ($64,911.60), there being a difference in favor of the assets over the liabilities of nineteen thousand, nine hundred and nineteen dollars and eight cents ($19,919.08).

The death of the husband took place two years later, and it is not clearly known what occurred in regard to the administration of the property; but it does appear from a public document that the plaintiff in the present case, by a notarial deed of November 29, 1879, acknowledged that she owed to Doña Joaquina Julia, the widow and heiress of Don José Borrell, the sum of twenty-five thousand, four hundred and sixty-three dollars and eighty-four cents ($25,463.84), and executed a mortgage in her favor for that amount on two properties, one of them the plantation "María," leaving in force the mortgage constituted by her husband on May 11, 1867. The mortgage in favor of the widow, Borrell, being foreclosed, without opposition on the part of the plaintiff herein, 185 *cuerdas* of the plantation "María," were adjudicated to the mortgagee, Mrs. Borrell, and which said mortgagee, later on and by public deed of December 19, 1888, sold to Don Alonso del Río. No mention is made, in any of these documents, of the legal or tacit mortgage which forms the basis of the present suit. And everything proven on the trial tends to show that, either the plaintiff kept the management of her personal property to herself, or, once being in charge of the property left her by her husband at his death, she collected her claim, or continuing in business and assuming all risks, she lost both what belonged to the heirs of her husband and what belonged to her, being left without resources, as it appears from the evidence of witnesses.

Document number seven of the defendant, of which there is a copy on page 73 of the record of this court, is interesting as a means to ascertain the knowledge which the plaintiff herein had of the foreclosure proceedings taken by the widow,

Borrell, and of the intention of Alonso del Río in regard to the purchase of the property, and of the conformity of the plaintiff with everything.

On the other hand, in opposition to the dubious right of the plaintiff, we find the clear right of the defendant succession to possess as the owner, and free from the encumbrance to which the complaint refers, the property described therein. It appears from the pleadings and from the evidence, that, about the year 1888, some lots from the properties of the Suro Succession were sold at public auction for the payment of taxes and were acquired by Alonso del Río, some of them by adjudication to him at the auction sale and others by purchase from the successful bidders; and, moreover, that said Alonso del Río acquired, in the year 1888, the 150 *cuerdas* which were adjudicated to the widow, Borrell, as hereinbefore stated.

From the facts stated, and under the jurisprudence cited and referred to, it appears to us clear that the order overruling the motion for a new trial in this case was entirely justified and should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Figueras and Wolf concurred.

Mr. Justice del Toro did not sit at the hearing of this case.